THOMAS, Justice.
The history of the incident here involved and the resultant litigation is lengthy and varied.
The claimant suffered an injury to his back, 18 September 1959, in the course of his work while pushing a wheelbarrow. The employer did not contest the validity of the injury and supplied compensation for temporary total disability from the date of the accident until 23 November 1959 when the insurance carrier took the position that the workman had reached maximum medical recovery with no residual disability and discontinued the payments. The claimant disagreed and filed a claim for additional compensation.
At a hearing before the deputy commissioner an assortment of physicians gave dif *290 fering views of the claimant’s condition, some testifying that he had a mild back sprain and was affected by psychogenic elements often described as functional overlay. The deputy decided that the claimant had suffered a genuine back injury and awarded him benefits. In the interim between inception of the litigation and the first order of the deputy two laminectomies had been performed. He found that “the claimant reached maximum recovery on November 22, 1959 from and after which claimant was permanently partially disabled, except for a period of 6 weeks commencing May 20, 1960 during which time he was temporarily totally disabled because of hospitalization and recovery” and that “at the termination of said 6 week period claimant reverted to his permanently partially disabled condition.” He concluded that the claimant had sustained permanent partial injury of the body as a whole to the extent of 15 per cent.
Later a petition for modification was filed and the parties then stipulated, 9 November 1962, with reference to various phases of the claim, which agreement was approved by the deputy four days later. The employee was, consequently, paid an additional 25 per cent, for permanent partial disability of the body as a whole. It was specified in the stipulation that neither the employer nor the carrier would be liable for expenses incurred for services by a certain Dr. Rich, and that any further medical services would be furnished by Dr. Ehlert or Dr. Baird.
After accepting this additional award the claimant sought still more benefits whereupon he was referred to Dr. Ehlert and Dr. Baird neither of whom found need for further remedial attention. Meanwhile the claimant filed a petition for modification and continued to receive treatment from Dr. Rich.
Then counsel agreed to have an examination by Dr. Lyle Russell who pronounced a residual disability attributable to the claimant’s low-back condition.
The claimant continued to get treatment at the office of Dr. Rich.
On January 27, 1965, the deputy entered an order which deserves scrutiny particularly in view of the stipulation that had been signed by the parties. It will be recalled that the services of Dr. Rich were, in a sense, disdained by the employer and carrier. Although it was agreed that they pay him $60 for treatment already furnished the claimant, it was stated that this doctor was “not authorized * * * to examine the employee and therefore in the future if the nature of the employee’s injury requires further remedial medical treatment, [sic] The employee is to return to Dr. Albert Ehlert or Dr. Duke Baird for examination and/or treatment.”
Yet in his compensation order the deputy seemed to lean heavily on the testimony of this doctor who had concededly made no reports to the employer or the carrier. The deputy observed that he had “considered the testimony of the Claimant and his wife, as well as the medical testimony of Dr. Rich and the various medical reports stipulated by mutual agreement” and made the finding, among others, that the testimony of Dr. Rich indicated the claimant’s condition had worsened from 50 per cent, to 60-75 per cent, which opinion he chose over the opinions of other medical experts because, so he commented, this doctor had seen the man continually since 1962. This statement was prompted by the fact that the claimant was an attendant of a parking lot adjacent to the building where the doctor maintained his office.
Although the deputy declined to reimburse the claimant for the cost of Dr. Rich’s services, he specifically found in his order that medical care in the future “shall be provided by Dr. Maurice Rich” then added, “or any other practitioner mutally agreeable to the parties * *
Upshot of the hearing was that claimant be compensated 60 per cent, permanent partial disability of the body as a whole and *291 that the carrier be credited with compensation before then paid for permanent partial disability.
Based on this record the petitioners have chosen two points for consideration and resolution by this court: (1) Whether or not additional permanent disability compensation under Section 440.28, Florida Statutes, F.S.A., can be allowed on the theory that there had been a change of condition for the worse when any such change even if established did not result in a decrease of earning capacity, and (2) Whether or not in view of a stipulation such as we have described, containing an agreement that further treatment shall be administered by two named physicians, the deputy can ignore the stipulation and the opinions of the physicians specified that treatment is not required and, we might add, put reliance on the very doctor for whom under the stipulation responsibility was denied, and in disregard of the two doctors who, by the stipulation were acceptable.
In presenting the first point petitioners adopt as a premise the rule that unscheduled injuries are compensated only on the basis of diminution in wage-earning capacity and to emphasize the view direct us to our decision in Southern Bell Telephone & Telegraph Co. v. Bell, 116 So.2d 617 (Fla.1959). We think that ruling is abundant authority for the position now assumed since the claim arose before the amendment of Section 440.15(3) (u) by Chapter 65-168 which became effective 1 July 1965.
We conclude that under the original provisions it was not shown by competent, substantial, reasonable and logical testimony that the capacity of the claimant to earn wages had diminished to sitch degree as to justify the eventual award.
On many occasions this court has encouraged the use of stipulations as means of reducing, if not resolving, issues and commented on their value in controversies in compensation cases within the past year in Steele v. A. D. H. Building Contractors, 174 So.2d 16 (Fla.1965). The stipulation in the instant case was quite ambiguous and deserved much more weight than the deputy accorded it. Had he followed it faithfully we are convinced he would have come to a contrary result.
We conclude that the deputy was wrong when he entered his order and that the Full Commission was wrong in' affirming it, so the latter order is quashed with directions to quash the former and proceed to a determination in harmony with the views we have expressed.
CALDWELL, ERVIN and HOBSON (Retired), JJ., concur.
THORNAL, C. J., dissents with opinion.